CR940066397S, CR930100155S    :    SUPERIOR COURT
CR980124871S
STATE OF CONNECTICUT         :    STAMFORD/NORWALK

vs.                        :    AT NORWALK

EMANUEL B. SMITH           :    APRIL 6, 1999


B E F O R E:
    The Honorable Eddie Rodriguez, Jr., Judge


A P P E A R A N C E S:
    For the State of Connecticut
        Attorney Matthew Couloute

    For the Defendant
        Attorney David Marantz


                                   Court Clerk
                                   Madeline Opper

                                   Court Reporter
                                   Patricia A. Pernacchio

1    mere Possession of Narcotics case. So I think the

2    real issue here, Your Honor, is whether the police

3    received additional information, which was not

4    indicated in the police report regarding whether

5    the CI saw that the defendant had drugs on him

6    with either intent to possess or intent to sell,

7    and I don't see that here, Your Honor, and I think

8    that this evidence must be suppressed.

9        THE COURT: Anything else, Mr. Marantz?

10       MR. MARANTZ: No, Your Honor.

11       THE COURT: Mr. Couloute?

12       MR. COULOUTE: No, sir.

13       THE COURT: Sheriff, I'll take a fifteen

14   minute morning recess at this time. I will have

15   an opportunity to review my notes and come out and

16   issue a ruling on the Motion to suppress.

17       THE SHERIFF: All rise. Court is now in a

18   fifteen minute recess.

19       (Off the record at 11:30 a.m. and back on the

20   record at 11:50 a.m.)

21       THE SHERIFF: All rise. Court is now

22   reconvened. You may be seated.

23       THE COURT: The court has had the

24   opportunity to review some of the authority relied

25   upon by the state as well as the defendant and

26   other authority not mentioned in argument by

27   counsel to the court with respect to suppression

1    of items that were seized on August 26, 1998.

2        The court finds that at the time of

3    August 26, 1998 the following facts occurred in

4    Stamford.  Officer larry Eisenstein, a veteran

5    member of the Stamford Police Department together

6    with some of his colleagues, received information

7    from a confidential informant.  Officer Eisenstein

8    was on duty, received a call from a confidential

9    informant who said a motor vehicle was parked at

10   186 Greenwich Avenue, a public housing residential

11   building.  He said that a car was in the lot

12   described as an Olds Cutlass, gray, with further

13   physical description of said Cutlass bearing

14   Connecticut Registration 679 MBX.  Officer

15   Eisenstein works with the confidential informant

16   since 1990 and recently and over ten occasions

17   received reliable information leading to the

18   successful arrest, seizure and convictions of

19   other defendants, and in excess of thirty since

20   1990.

21       The informant provided Officer Eisenstein

22   with information that the said motor vehicle

23   contained an unspecified quantity of contraband,

24   specifically crack cocaine inside of the motor

25   vehicle.  The confidential informant further

26   stated that the vehicle was operated by a black

27   male who was described as 6 feet, over 200 pounds,

1   who was in the company of a female known to the

2   confidential informant as Marlene.

3       The officer set up a surveillance following

4   the receipt of that information.    Upon arrival at

5   the location the officers' confirmed the

6   information provided by the confidential informant

7   with respect to the location and description of

8   the motor vehicle, and the presence of a black

9   male fitting the description.    The surveillance

10  was conducted for a period of about fifteen

11  minutes.    During which time no drugs were seen by

12  the police officer nor were any transactions

13  observed.

14      But the police officer did observe a black

15  male fitting the description later found and

16  identified as the defendant Mr. Smith,

17  Emanuel B. Jr., approaching the vehicle leaning

18  down from his waist to the driver's side of the

19  motor vehicle.

20      The police moved in and Mr. Smith fled on

21  foot, and he attempted to cross a bridge.    He was

22  apprehended approximately 100 feet from the

23  location of said motor vehicle.    The defendant

24  fought the police who identified themselves as

25  police officers with a badge plainly displayed

26  during the pursuit and during the resistance.

27  The defendant was wrestled down.    The keys were

1    taken from the defendant.

2         The confidential informant has prior arrests

3    for drug possession and in fact has a pending case

4    in the Stamford Judicial District.   The

5    confidential informant did not know the defendant

6    but did know his companion Marlene.   The

7    confidential informant never provided information

8    that he saw Marlene handle drugs nor did he say

9    the defendant handled drugs.  The confidential

10   informant never bought, purchased --   when I say

11   bought, purchased drugs from the defendant nor

12   Marlene, however, the confidential informant is in

13   fact known at least to Officer Eisenstein to be a

14   drug user.   When the defendant was apprehended,

15   no drugs were found on his person.  The police had

16   previously determined prior to moving in that the

17   car was registered to someone other than the

18   defendant and his companion.   Specifically a car

19   Acarde Andre Dozier.

20        The police officer determined that the

21   defendant was Emanuel B. Smith, Jr. after

22   apprehending him and seeing a pager and some cash.

23   The confidential informant never saw drugs being

24   placed in the motor vehicle.  The confidential

25   informant did not witness nor participate in the

26   crime.   At this time of the search and subject

27   seizure the motor vehicle was unoccupied and

1    locked.  The defendant was not in the car.   There

2    were no plain view circumstances wherein

3    contraband was seen by the police officers nor

4    were there any existent circumstances at the time

5    of the search of the automobile.

6        Under both the federal and state constitution

7    the police must first obtain a warrant before

8    conducting a search unless an exception to the

9    warrant requirement applies.  I'm quoting from

10   Katz versus the United States, at 389 U.S. 347.

11   The warrant is required before every search or

12   seizure subject only to a few specifically

13   established and well delineated exceptions.

14       Quoting from the State of Connecticut versus

15   Longo found at 243 Connecticut 732, which further

16   quotes from the U.S. versus Rose case, 456 U.S.

17   798.   The scope of a warrant search of a

18   automobile is defined by the object of the search

19   and places in which there is probable cause to

20   believe that it may be found.

21       Quoting from Longo it is undisputed that in

22   that particular case occupants of a motor vehicle

23   and plural, occupants of a motor vehicle were

24   lawfully stopped, based upon traffic violations.

25   The probable cause to search the vehicle arose

26   when the police officer Pagonni smelled marijuana

27   and actually saw the marijuana seeds and

1      cigarettes in plan view inside of the car.  Here

2      the officers were searching for marijuana and

3      weapons.

4            Quoting State versus Dukes, which is 209

5      Connecticut '98, a police officer again stopped a

6      vehicle occupied by the defendant for a motor

7      vehicle violation determined that the license of

8      the operator --   defendant, had been suspended

9      and arrested him for that offense.  A search of

10     the defendant's clothing found a package of crack

11     cocaine in his jacket, which resulted in a search

12     of the vehicle for additional contraband.

13           Under the automobile exception, it permits a

14     warrantless search of an automobile whenever the

15     police have probable cause to do so.   Most of the

16     authorities cited for the search of an automobile

17     without a warrant referred to the defendant as

18     either a passenger or an operator and some

19     corroborating information by the police to

20     establish probable cause beyond information

21     provided by a confidential reliable informant.

22           In the State versus Leonard case, 14 Conn.

23     App. 134, which was affirmed by our Supreme Court

24     at 2210 Conn. 4890, the defendant was a passenger

25     in his own car.  The police officer noticed the

26     defendant as he appeared to be pushing something

27     under the front seat.  The police officer looked

1   in and saw white powder on the driver's jacket and

2   mustache.   The white powder was in plain view.

3   The police officer had personal knowledge of his

4   training and experience that the white powder

5   could be contraband establishing, therefore,

6   probable cause to belief that the car contained

7   contraband and a warrantless search, therefore,

8   did not violate the defendant's federal or state

9   constitutional protection against unreasonable

10   searches and seizures.

11       In this instant case of State versus Smith

12   the basis of knowledge of the confidential

13   informant as well as his veracity not withstanding

14   the prior successful arrests resulting from

15   information provided by the said confidential

16   informant but particularly the basis of knowledge

17   of the confidential informant is at issue.

18       Here there were no exigent circumstances for

19   a warrantless search of the motor vehicle, which

20   as I stated was unoccupied and locked.   There was

21   no surveillance by the police prior to the search

22   to corroborate the confidential informant's

23   information that in fact drugs were contained

24   inside of the motor vehicle.

25       There was no evidence of any prior purchases

26   or controlled business to establish probable cause

27   to search the motor vehicle.   There was no plain

1    view of the contraband in the closed motor

2    vehicle.    There was no contraband found on the

3    person of the defendant after a search incident to

4    his arrest for fleeing and physically resisting

5    the police.    There were no statements by the

6    confidential informant to the police implicating

7    the confidential informant as a potential

8    defendant subject to arrest for purchasing

9    contraband from either the defendant or his

10    companion Marlene Smith and/or involving the

11    storage of drugs in the motor vehicle.

12        The Smith case is clearly distinguishable

13    from the Velasko case which was a case I should

14    state it's 248 Conn. 183, March 30, 1999 decision.

15    Because in the Velasko case veracity and basis of

16    the confidential --    basis of knowledge of the

17    confidential informant were his personal

18    observations and his actual participation in the

19    purchase of drugs from the defendant and it was a

20    finding of probable cause to conduct a warrantless

21    search of a person as opposed to the motor

22    vehicle.    The court finds that the property was

23    illegally seized without a warrant under

24    circumstances requiring of a warrant.    After

25    considering the totality of the circumstances the

26    warrantless search of the defendant --    of the

27    motor vehicle not the defendant, motor vehicle --

1    but the motor vehicle and the subject seizure of

2    the items inside of the motor vehicle were seized

3    in violation of Article First, Section Seven of

4    the Connecticut Constitution and the Fourth and

5    Fourteenth Amendment to the United States

6    Constitution.    And the Motion to Suppress is

7    granted.    Items seized including the contraband,

8    any personal affects are supressed, ordered

9    supressed in this case.

10        MR. COULOUTE:    The state takes exception

11    and asks permission to appeal.

12        THE COURT:    Exception noted.

13        THE COURT:    Permission granted.

14        MR. COULOUTE:    Thank you.

15        THE COURT:    With that, Mr. Couloute, we have

16    a jury here.  We have as I recall two proceedings,

17    one of them involving a fourth count of

18    interfering with a police officer and the parallel

19    proceeding of violation of probation case.

20        MR. COULOUTE:    The state will not proceed on

21    the interfering count, sir, not in front of a

22    jury, sir.

23        THE COURT:    All right.  Well, you have a

24    Violation of Probation petition as well?

25        MR. COULOUTE:    Yes, sir.

26        THE COURT:    Are you prepared to proceed with

27    that?

1    MR. COULOUTE:   Not today, no, sir.

2    THE COURT:   What are you requesting?

3    MR. COULOUTE:   I'm requesting a day to have

4    the probation officer come in.  They were

5    scheduled to come in tomorrow.  We'll proceed

6    tomorrow.

7    THE COURT:   All right.   Did you wish to be

8    heard, Mr. Marantz?

9    MR. MARANTZ:   Your Honor, at this point we

10   are ready to proceed.  If the state is not ready

11   to proceed, we ask the matter be dismissed.

12   THE COURT:   I don't think the state said

13   it's not ready to proceed, I think that the state

14   said it was not going to prosecute the fourth

15   count.

16   MR. MARANTZ:   I ask the case be dismissed,

17   Your Honor.

18   THE COURT:   Mr. Couloute, are you entering a

19   nolle as to the fourth count, because if you are I

20   would assume that Mr. Marantz is going to object

21   and request that we proceed with the trial, is

22   that correct?

23   MR. MARANTZ:   Yes, sir.

24   MR. COULOUTE:   The state is entering a nolle

25   at this time, Your Honor.

26   THE COURT:   All right.  Nolle noted as to

27   the fourth count.   And the matter of the State

*There is no Fourth Count* (handwritten marginal note)

1    versus Smith is continued one day at the state's

2    request in order to proceed with the Violation of

3    Probation Petition.  Madame Clerk, April 6.

4              MR. MARANTZ:    If I may just briefly be

5    heard, there was a Motion for Bond Reduction heard

6    by Judge Comerford, that Judge Comerford reserved

7    judgement on and determined that be heard before

8    the trial court.  We have not proceeded with that

9    motion.  I understand that the defendant has got a

10   $50 bond regarding the Violation of Probation,

11   however, he's held on a $100,000 bond regarding

12   this case.  In light of the court's ruling --

13             THE COURT:    You're putting the state on

14   notice you want to argue bond tomorrow.  The

15   state's entitled to notice.  I'll here you on that

16   request and make it in writing tomorrow when I

17   proceed with --   when the state proceeds and I

18   hear the Violation of Probation Petition.  All

19   right.

20             MR. MARANTZ:    Thank you, Your Honor.

21             THE COURT:    The matter is continued one day.

22   Court stands in recess.

23             THE SHERIFF:    All rise.  Court stands in

24   recess.

25             (Whereupon, the above case recessed at 12:06

26   p.m. to reconvene the following morning at

27   10:00 a.m.)

```
CR940066398S, CR930100155S      :      SUPERIOR COURT
CR980124871S
STATE OF CONNECTICUT            :      STAMFORD/NORWALK

vs.                             :      AT NORWALK

EMANUEL B. SMITH                :      APRIL 6, 1999
```

        I, Patricia A. Pernacchio, Court Reporter for the Superior Court, County of Fairfield do hereby certify that the foregoing is a true and accurate transcription of my steno notes taken in the above described case.

Patricia A. Pernacchio
Court Reporter