FILED

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
### AMENDED
## APPLICATION FOR A WRIT OF HABEAS CORPUS
### PURSUANT TO 28 U.S.C. § 2254
### BY A PERSON IN STATE CUSTODY

2004 JAN 22  P 4: 20

US DISTRICT COURT
BRIDGEPORT CT

_Emmanuel B. Smith JR._ 232549 , Petitioner,
Full Name and Prisoner Number

_Bridgeport cerection center_
Complete Prison Address (Place of Confinement)

_1106 North Avenue_

_Bridgeport, connecticut. 06604_

Case No. 3:03cv676 (RNC)
(To be supplied
by the Court)

v.

_John Tarasci_ ___ , Respondent, Walter Ford-New warden,
(Name of Warden or authorized person
having custody of petitioner)
(Do not use _et al._)

and

_Theresa Lantz_ , Additional Respondent. Commissioner of department of correction,
(List additional persons having custody
of petitioner, if any)
_John G. Rowland_

Note: If the applicant is challenging a judgment which imposed a sentence to be served
in the future, applicant must fill in the name of the state where the judgment of
conviction was entered.  If the applicant has a sentence to be served in the future
under a federal judgment, which he/she wishes to challenge, he/she should file a
motion under 28 U.S.C. § 2255, in the federal court which entered the judgment.

## CONVICTION BEING CHALLENGED

1) Name and location of the court which entered the judgment of conviction you are challenging  Stamford court of Connecticut - G.A. Zone.

123 Hoyt street, Stamford, Connecticut. 06905

2) Date judgment of conviction was entered  Judgment - 12-10-02, sentence 1-31-03

3) Case number (in state court)  CR98-0124871-S, SC-16254.

4) Type and length of sentence imposed  7 years to serve.

5) Nature of the offense involved (all counts)  53a-167 interfering, 21a-279a(a) possession of narcotics with intent to sell, 21a-278 a(b) possession of narcotics within 1500 feet of housing project, 21a-279(a) possession of narcotics,

6) What was your plea? (check one)
Not Guilty ✓  Guilty __  Nolo Contendere __

7) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to:
No guilty plea for any count, not guilty for all counts

8) If you entered a plea of guilty pursuant to a plea bargain, state the terms and conditions of the agreement  no guilty plea

9) Kind of trial (check one)   Jury ✓ Judge only __

10) Did you testify at trial?  Yes __  No ✓

# DIRECT APPEAL

11)  Did you appeal from the judgment of conviction?     Yes ✓  No __

12)  If you did not appeal, explain briefly why you did not: _____

_____

_____

    (a)  Did you seek permission to file a late appeal?  Yes __  No __

13)  If you did appeal, answer the following:

    (a)  Name of court:  _Supreme court - Appellate court_

    (b)  Docket number (if you know):  _SC.16254, New - A.C.23977,_

    (c)  Result (attach a copy if you have one):  _copy attached_

    (d)  Date of result (if you know):  _For SC.16254 was July 31,2001. For the new Appeal for the same case A.C.23977 - result not known yet._

    (e)  Citation to the case (if you know):  _Copys are attached with citation_

    (f)  Grounds raised: _① The trial courts findings of fact were not clearly erroneous., ② The trial court's legal conclusions were legally and logically correct in light of the findings of fact., ③ The trial court correctly concluded that the warrantless search was not justified as a search for fruits or instrumentalities of a crime because there were neither probable cause nor exigent circumstances to excuse obtaining a warrant., ④ The search of the car can not be justified as incident to a valid arrest ⑤ The arrest itself was not valid., ⑥ The search of the car was not incident to arrest._

_____

14)  If your appeal was denied by the Connecticut Appellate Court, did you file a petition for certification with the Connecticut Supreme Court?   Yes ___  No ___
                                                         _Appeal was not denied._

15)  If you sought certification, answer the following:

    (a)  Date of decision (if you know): _____ _none_ _____

    (b)  Citation to the case (if you know): _____ _none_ _____

(c)    Grounds raised (or attach a copy of the petition for certification if you have one): _____

_____ *none* _____

_____

16).    Did you file a petition for certiorari in the United States Supreme Court?
Yes_____    No__✓__

If yes, answer the following:

(a)    Docket number (if you know): _____

(b)    Result: _____

_____

(c)    Date of result (if you know): _____

(d)    Citation to the case (if you know): _____

(e)    Grounds raised: _____

_____

_____

_____

_____

4

## POST-CONVICTION PROCEEDINGS

17)    Other than a direct appeal from the judgment of conviction and sentence, have
you previously filed any petitions, applications, or motions with respect to this
judgment in any state court?     Yes ✓ No __   *on 5-21-03*

18)    If your answer to Question 17 was "Yes," give the following information:

(a)    FIRST petition, application or motion.

(1)    Name of court: *Superior court GA, 2, 1061 main Street, Bridgeport, ct 06601*

(2)    Docket number (if you know): *CV-03-0403151-S (2B4)*

(3)    Nature of proceeding: *The court has done nothing to help move this case along at my libertys expense.*

(4)    Grounds raised: *There a copy attached with the grounds raised.*

_____

_____

_____

_____

(5)    Did you receive an evidentiary hearing on your petition, application
or motion? Yes __ No ✓ *I be given the runaround the these state courts because of the money made from goverment Grants.*

(6)    Result: _____

(7)    Date of result (if you know): _____

(8)    Did you appeal the result to the highest state court having
jurisdiction? Yes __ No __

If you did appeal, give the name of the court where the appeal was filed,
the result, the case number, citation and date of the court's decision (or
attach a copy of the court's opinion or order)

_____

_____

5

5e. 98; 5e, 54, 5 4. 54;

24 of 24

Supporting Facts, State and Federal law.
— Grounds Raised —

① .(C) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure,

② .(B) conviction obtained by use of evidence obtained pursuant to an unlawful arrest, there was no probable cause found on 8-27-98 for the charge Interfere with offcr/Resisting type/class= m/A-CGS/PA number: 53a-167a, and this charge was the reason as to why the supreme court of connecticut seen exigent circumstances and my dismissal for docket number CR98-124871-T-S was reversed and the case was remanded for furthr proceeding according to law. Also this charge of Interfere with offcr/Resisti (CGS) section 53a-167a no probable cause found puts further proceedings in violation of connecticut General Statutes section 53-39. malicious prosecut

③ .(e) conviction obtained by a violation of the privilege against self-incrmination,

④ .(f) conviction obtained by the unconstitutional failure of the prosection to disclose evidence favorable to the defendant,

⑤ .(g) conviction obtained by a violation of the protection against double jeopardy,

⑥ . Trial judge, and prosecution deprived jury of its fact-finding duty for second trial on dates  11-21-02 thru 12-10-03,

⑦ . Prosecutorial misconduct ,

⑧ . state also used perjured testimony at trial and allowed untrue testiny to go uncorrected,

⑨ . denial of effective assistance of counsel.

⑩ . discriminatory application of penal laws by state Judicial and Quasi-Judial officers, or state officials playing the Shell game of rights and remedie

⑪ . Punishment as a pre-trial detainee.

(9)    If you did not appeal, briefly explain why you did not:  *no response*
*as of yet.*

(10)    If your appeal was decided by the Connecticut Appellate Court, did you file a petition for certification to appeal the decision to the Connecticut Supreme Court?  Yes ___  No ___

(11)    If you sought certification, give the citation and date of the court's decision or attach a copy of the decision.  Also attach a copy of the petition for certification or list the issues for which certification was sought.  _____

_____

_____

_____

(b)  As to any SECOND petition, application or motion, give the following information:

(1)    Name of court: _____ *None* _____

(2)    Docket number (if you know): _____

(3)    Nature of proceeding: _____

(4)    Grounds raised: _____

_____

_____

_____

_____

(5)    Did you receive an evidentiary hearing on your petition, application or motion?  Yes ___  No ___

(6)    Result: _____

(7)    Date of result (if you know): _____

6

(8)    Did you appeal the result to the highest state court having jurisdiction?  Yes ___ No ___

If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order)

_____

_____

(9)    If you did not appeal, briefly explain why you did not:  _____

_____

(10)   If your appeal was decided by the Connecticut Appellate Court, did you file a petition for certification to appeal the decision to the Connecticut Supreme Court?  Yes ___ No ___

(11)   If you sought certification, give the citation and date of the court's decision or attach a copy of the decision.  Also attach a copy of the petition for certification or list the issues for which certification was sought.  _____

_____

_____

_____

c)    As to any THIRD petition, application or motion, give the following information:

(1)    Name of court: _____

(2)    Docket number (if you know): _____

(3)    Nature of proceeding: _____

(4)    Grounds raised: _____

_____

_____

_____

_____

(5)     Did you receive an evidentiary hearing on your petition, application or motion?  Yes __ No __

(6)     Result: _____

(7)     Date of result (if you know): _____

(8)     Did you appeal the result to the highest state court having jurisdiction?  Yes __ No __

If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order)

_____

_____

(9)     If you did not appeal, briefly explain why you did not:  _____

_____

(10)    If your appeal was decided by the Connecticut Appellate Court, did you file a petition for certification to appeal the decision to the Connecticut Supreme Court?  Yes ____   No ____

(11)    If you sought certification, give the citation and date of the court's decision or attach a copy of the decision.  Also attach a copy of the petition for certification or list the issues for which certification was sought. _____

_____

_____

_____

8

# CLAIMS

19) State concisely every ground on which you claim that you are being held in violation of the Constitution, laws or treaties of the United States. Summarize briefly the **facts** supporting each claim. If necessary, you may attach extra pages stating additional claims and supporting facts. You should raise in this petition all claims for relief which relate to the conviction being challenged.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**Ground One:** exhausted Fourth Amendment claim, unlawful search and seizer claim because of the reasons that follow: The State did not provide an opportunity for full and fair litigation of the Fourth Amendment claim; Decision justifying the unconstitutional search and seizure was contrary to, and involved an unreasonable application of federal law clearly established by the U.S. supreme court, and was based on an unreasonable determination of the facts.

(a) Supporting Facts (Do not argue or cite law. Just briefly state the facts that support your claim): At my arraignment there was no determination of probable cause for charge interfering 53a-167a, which was the reason for my original arrest and incident to search of a car that I was not a occupant nor positively linked to. Also the automobiles owner was determined during the fifteen minutes of surveillance, that owner being Acarde Andre Dozier. In addition I was recognized by one officer name Larry Eissenstein over a 100 feet away, in a fenced in construction yard. I was search incident to arrest and did not yield any contraband. After arrest, police opted to remove me from the fenced in construction yard over a 100 feet away from the car and transport me handcuff not to a hospital or a police station, but rather to the lock'cat belonging to Acarde Andre Dozier. Also I being made to suffer because I'm addicted to narcotics. In officer case Eissenstein statement, he said that informant never provided information that Marlene handle drugs (note in the police report it states something different). Attached is a full account as to that which happen as well as a police report and transcripts from date 4-6-99.

(b) If you did not exhaust your state court remedies on Ground One, briefly explain why: _____

*(margin note, written vertically:)* Police took action to create a problem to justify search and seizure.

(c) Direct Appeal of Ground One:

   (1) If you appealed from the judgment of conviction, did you raise this issue? Yes ✓  No _____

# COUNTER COUNTER STATEMENT OF THE ISSUES

I. Whether the Trial Court's Findings of Fact Were Clearly Erroneous?.................................... 8

II. Whether the Trial Court's Legal Conclusions Were Legally and Logically Correct In Light of the Findings of Fact? .................................................................. 12

# TABLE OF AUTHORITIES

## CASES

<u>Carroll v. U.S.</u>, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) .................................... 13, 14

<u>Chimel v. California</u>, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969) ................. 18, 19, 24

<u>Johnson v. U.S.</u>, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) ........................................ 23

<u>New York v. Belton</u>, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) ..................... 23, 24

<u>Sibron v. New York</u>, 392 U.S. 40, 88 S. Ct. 1889, 20 L.Ed.2d 917 (1968) ............................ 23

<u>Smith v. Ohio</u>, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) .................................. 23

<u>State v. Badgett</u>, 200 Conn. 412, 512 A.2d 160, <u>cert. den</u>, 479 U.S. 940,
    107 S.Ct. 423 (1986) ................................................................. 13, 14, 18, 23, 24

<u>State v. Delossantos</u>, 211 Conn. 258, 559 A.2d 164, <u>cert. den</u>, 493 U.S. 866,
    110 S.Ct. 188, 107 L.Ed. 2d 142 (1989) ........................................................ 14, 23

<u>State v. Diaz</u>, 226 Conn. 514, 628 A.2d 567 (1993) ......................................................... 14

<u>State v. Donahue</u>, 251 Conn. 636, 742 A.2d 775 (1999) .............................................. 8, 12, 22

<u>State v. Dukes</u>, 209 Conn. 98, 547 A.2d 10 (1988) ......................................................... 14

<u>State v. Ellis</u>, 232 Conn. 691, 657 A.2d 1099 (1995) ...................................................... 8, 12

<u>State v. Geisler</u>, 222 Conn. 672, 610 A.2d 1225 (1992)...................................................... 14

<u>State v. Jackson</u>, 162 Conn. 440, 294 A.2d 517, <u>cert. den</u>, 409 U.S. 870, 93 S.Ct. 198,
    34 L.Ed.2d 121 (1972) ................................................................................ 14

<u>State v. Kock</u>, 302 Or. 29, 725 P.2d 1285 (1986). ............................................................ 18

<u>State v. Lamme</u>, 19 Conn. App. 594, 563 A.2d 1372 (1989), aff'd., 216 Conn. 172,
    579 A.2d 484 (1990)................................................................................... 15

<u>State v. Martin</u>, 2 Conn. App. 605, 482 A.2d 70, <u>cert. denied</u>, 195 Conn. 802, 488 A.2d 457
    (1984), <u>cert. denied</u>, 472 U.S. 1009, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985).................. 21

<u>State v. McClain</u>, 171 Conn. 293, 370 A.2d 928 (1976) ..................................................... 18

<u>State v. Miller</u>, 227 Conn. 363, 630 A.2d 1315 (1993)........................................ 13, 14, 15, 17

State v. Oquendo, 223 Conn. 635, 613 A.2d 1300 (1992) ......................................... 17, 21, 22

State v. Velasco, 248 Conn. 183, 728 A.2d 493 (1999) ................................................ 7, 8, 16

State v. Waller, 223 Conn. 283, 612 a.2d 1189 (1992) ....................................................... 24

State v. Wilkins, 240 Conn. 489, 692 A.2d 1233 (1997) .................................................. 13, 15

Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed. 2d 889 (1968) ....................................... 21

## CONSTITUTIONAL PROVISIONS

Conn. Const. Article I, § 7 .................................................................6, 12, 13, 14, 16

U.S. Const. Amend. IV.....................................................................................6, 16

U.S. Const. Amend. XIV ..................................................................................... 6

## CONNECTICUT GENERAL STATUTES

Conn. Gen. Stat. §21a-278 ................................................................................... 1

Conn. Gen. Stat. §21a-278a.................................................................................. 1

Conn. Gen. Stat. §21-279 .................................................................................... 1

Conn. Gen. Stat. §53a-167a.................................................................................. 1

Conn. Gen. Stat. §54-1f(b) ................................................................................21
                 53-39

## CONNECTICUT PRACTICE BOOK

Conn. Prac. Bk. §37-12 ....................................................................................20

*Background of case*

**Nature of the Procedings:** The defendant was arrested without a warrant on August 26, 1998, and charged with possession of narcotics, in violation of C.G.S. §21a-279(a); sale of certain illegal drugs, C.G.S. §21a-278(a), controlled substance within 1500 feet of a school, C.G.S. §21a-278a(b), and interfering with a police officer, C.G.S. §53a-167a, a class A misdemeanor. On August 27, 1998 the court (Tobin, J.) found probable cause as to the three narcotics charges, and the defendant entered pleas of not guilty and elected trial by jury. T8/27/98 p1; R. He moved to suppress evidence and to dismiss all charges against him. R. On April 6, 1999 a hearing was held on those motions before the court (Rodriguez, J.). On that date, the court ordered the seized items suppressed and the state entered a nolle prosequi as to the interfering charge. On April 7, 1999 the motion to dismiss was granted on all charges. R. The state was granted permission to appeal on April 6, 1999, and on April 21, 1999 it filed its appeal. This Court transferred the matter to itself on February 24, 2000.

**Statement of Facts:** This case involves the warrantless search of a car. The defendant was not arrested at the scene of the car, but rather within a fenced construction yard 100 feet away. After his arrest for the misdemeanor of interfering the police seized the car keys from the defendant, removed him from the fenced yard and transported him in handcuffs to the scene of the car, which they then unlocked and searched. One witness, Officer Larry Eisenstein of the Stamford Police Department, testified on 12-5-02 The facts recited here are derived from his testimony.

Officer Eisenstein had been a policeman for 20 years, and had been assigned to the Narcotics and Organized Crime Unit for 10 years. T38-39. At the time of his testimony, he worked with approximately ten informants on a regular basis. T39-40.

On August 26, 1998 Eisenstein received a call from a confidential informant with whom he had worked since 1990; Eisenstein considered him to have been reliable approximately 30 times. T41-

1

42. This informant had himself been arrested and had a possession of narcotics case pending, but Eisenstein considered him to be credible. T41, 49, 52. The informant had been used two or three weeks prior to this case, resulting in an arrest. T48. *motive or intent*

The informant told Eisenstein there was an old gray [blue] Cutlass, two door, blue vinyl roof, CT plate 679 MBX, parked in the public housing lot at 186 Greenwich Ave. T41. The informant claimed that inside the car was an "unspecific" amount of crack cocaine, and that the car was being operated by a black male, approximately 6 feet tall, over 200 pounds, muscular build, ~~beard and mustache,~~ wearing a black tee shirt, blue jeans and white sneakers. T42, 57. The man was in the company of a black female referred to as Marlene, who was a passenger in the car. T42, 65. The informant did not know the man but claimed to know Marlene because they socialized in the same circle. T49-50.

The informant claimed to have overheard a conversation between Marlene and the man before they left to get drugs, and claimed to know that Marlene had drugs on her person. T43, 51, 57. The information the informant gave police was that the two had already brought drugs back to the location and that the drugs were in the vehicle. T65. The informant never actually saw any drugs, never approached the car and was never in the car, and never saw any drugs being placed in the car. T51, 65. Eisenstein did not know if the informant ever saw Marlene handling any drugs. T51. Based upon the conversation the informant claimed to have overheard, Eisenstein and two additional police officers set up a surveillance of the parking lot. T43. They were in plain clothes and two unmarked police cars. T56, 58. A car matching the description given to them was backed into a parking space, and they watched it from two angles. T43. Everything about the car was exactly as the informant said it would be. T43. They ran the car's license plate and learned that it was registered to someone named Acordia Dozier, whom Eisenstein knew. T57, 59. Dozier had been involved in assault and was

2

*was*

incarcerated ~~as a suspect of a hit and run homicide; but had never been observed in connection with~~ ~~drugs. T59~~.

The three policemen watched the car and after fifteen minutes a black man approached the driver's side of the car. T43-44, 50. *The general description* Everything the informant said matched this man. T46-47. He opened the driver's side door with a key and leaned down from the waist, with his knees slightly bent, into the front of the car, and appeared to be looking and reaching in the vicinity of the front floor mat. T43-44, 50, 55. Police did not observe any bags or drugs; nor did they observe the man reaching under the seat. T55, 61. Eisenstein speculated that the man might have been putting drugs in the car, checking to see if drugs were still there, or rearranging their location. T56. After a few seconds the man rose, closed the door and locked the car. T44.

At that moment the three policemen moved in. T44, 61. One officer drove into the parking lot and exited his car; the others approached on foot. Eisenstein's police badge was displayed; as the police approached, the man immediately recognized them and ran. T44, 61, 62. *that an be it immediate threat of serious bodily injury or death also well-grounded belief that threat would become on so he ran.* Although in fact they had arrested this man in the past, at the point when they approached him and began to pursue him they did not yet recognize him. T47, 61.

One officer pursued the man on foot and the others pursued him in a police ~~car~~ *van*. T44. The man ran toward a bridge and was cut off by the police ~~car~~ *van*. T44. Eisenstein did not recognize the man he was chasing as the defendant until that point, which was the first "real good look" he had. T47. *one previous* ~~Eisenstein knew him from previous narcotics arrests. T47.~~

The man turned right and ran into a construction yard, where all three officers pursued him on foot. They caught him within a fenced area right near the Rippawon River. T44-45. One of the other officers recognized him when they caught up with him there. T47. During the chase nothing was said

3

by police or defendant, nor did the defendant say anything when the police attempted to take him into custody. T63. He struggled briefly but was wrestled to a prone position on the ground and handcuffed. T45.[1] The man was searched and the car keys were seized from him, as well as a pager and $93. T64. No drugs or weapons were found on his person.

At the point where the three police subdued, arrested, handcuffed and searched the defendant, he was about a hundred feet from the car the police wished to search, and he was separated from it by a fence. T44-45. This fenced area of the construction yard was also bounded by the Rippawon River. T44-45. Officer Eisenstein testified "We all walked back to the vehicle and … [another o]fficer … remained with the prisoner and called for a uniformed car to come secure the prisoner." T45.

When they got to the car, Eisenstein opened the driver's door, leaned across and opened the passenger door to allow another officer to enter from that side. T45. Eisenstein leaned down in the area where he had seen the defendant lean and lifted the floor mat. T45-46. Under the mat was a cellophane wrapper from a cigarette pack and inside that were eleven small yellow plastic bags, which the officer believed resembled crack cocaine. T46. Police also seized from within the car a receipt with the defendant's name, and a bank book in his name from the glove compartment. T46.

The defendant never gave police permission to search the car, nor did they attempt to contact the owner, Dozier. T64, 68. A check of the registration once the search was underway confirmed Dozier's ownership. T57.

The informant had told police that another person, Marlene, had contact with the vehicle. T50. After the defendant had been arrested she came out of an apartment, and Eisenstein questioned her. T60. She said the defendant had given her a ride by to visit friends. T54, 60. Although the informant

---

[1] Prior to being booked he was brought to the hospital for a what Eisenstein described as a "small

told police that she was in possession of narcotics, she was searched and no narcotics were recovered. T50-51, 52.

The car was never impounded or taken to the police station; it was left where it was. T65-66. Officer Eisenstein testified that there was no need to impound the car; that the police could instead "lock it, secure it, and leave it" where it was. T66-67. On the day of Eisenstein's testimony, more than seven months later, the car had been moved, but he did not know by whom. T66. There was no evidence regarding when, in the intervening seven months, it had been moved.

**Trial Court's Factual Findings:** The court found that Officer Eisenstein, a veteran officer, together with colleagues, received information from a confidential informant. Memorandum of Decision (hereinafter, Memo) 74.[2] The informant said that a gray Olds Cutlass, CT registration 679 MBX, was parked at 186 Greenwich Ave., a public housing residence. Memo, 74. Eisenstein worked with the informant since 1990 and on more than ten occasions received reliable information, leading to over thirty successful arrests, seizures and convictions. Memo, 74. The informant was a known drug user and had prior arrests for drug possession and a pending case in the Stamford JD. Id., 76. The informant told Eisenstein that the car contained an unspecified amount of crack cocaine.

The informant said the car was operated by an unknown black male described as 6 feet, over 200 pounds, in the company of a female known to the informant as Marlene. Id., 74-76. The informant did not say he saw the defendant or Marlene handled drugs. Id., 76. The informant never bought drugs from the defendant or Marlene. Id., 76. The informant never saw drugs being placed in the car. Id., 76. He did not witness or participate in the (sic) crime. Id., 76.

_laceration" to his forehead, as well as a diabetic condition. T46._

[2] The court adopted a transcript, with three corrections, as its memorandum of decision. R. The transcript page numbers will be used to cite to the memo.

The officer went to the location and saw a car and a man fitting the description given. Id., 75. The officer watched for 15 minutes, during which time there were no transactions and no drugs observed. Id., 75. The officer saw a black male fitting the description given approach the car and lean down from his waist to the driver's side of the car. Id., 75. This man was later identified as the defendant. The police determined that the car was registered to someone other than the defendant or his companion. Id., 76. The car was unoccupied and locked. Id., 76-77.

The police moved in and the defendant fled on foot. Id., 75. He attempted to cross a bridge and was apprehended approximately 100 feet from the car. Id., 75. He fought the police. Id., 75. He ~~was said to have fought police~~ ~~but there was no probable cause found~~ was subdued and the keys were taken from him. Id., 75-76. No drugs were found on the defendant's person. Id., 76. Police seized a pager and some cash from the defendant's person. Id., 76.

At the time of the search and seizure the car was unoccupied and locked by the defendant with keys in his possession. Id., 76-77. No contraband was seen in plain view. Id., 77. There was no evidence of either prior purchases or controlled buys. Id., 79.

**Trial Court's Legal Conclusions:** The trial court considered the totality of the circumstances of the warrantless search of the motor vehicle, and found that the seizure of the items within the car violated Article I, § 7 of the state constitution and amendments IV and XIV of the U.S. constitution. Memo, 81.The court found that under both state and federal constitutions, the police must obtain a warrant before conducting a search, unless an exception to the warrant requirement applies. Id., 77. It found that the exceptions are few, specific, and well-delineated. Id., 77. The court found that the scope of a warrant search of an automobile is defined by the object of the search and places in which there is probable cause to believe that it may be found. Id., 77. It found that a warrantless search of an

automobile is permitted when police have probable cause to do so. Id., 78-79. It found that in this

case there was no such probable cause. Id., 78-79.

The trial court concluded that the basis of knowledge of the confidential informant, as well as

his veracity, were at issue. Id., 79.[3]

It concluded that the defendant had an expectation of privacy in the car. Memo, 77(corrected).

It concluded that there was no surveillance by police prior to the search to corroborate the

informant's information that drugs were inside the vehicle. Id., 79.

It concluded that the search of the defendant's person, incident to his arrest, did not yield any

contraband. Id., 80. *nor was there any ability to the information's information that Marlene Smith had drugs in her pocket.*

It concluded that there were no exigent circumstances for a warrantless search of the motor

vehicle, which was locked and unoccupied. Id., 79. *and police could have secured it to get a warrant*

It concluded no contraband was in plain view in the closed motor vehicle. Id., 79-80.

It concluded that there was no probable cause to search the vehicle. Id., 79.

The trial court distinguished State v. Velasco, 248 Conn. 183 (1999), because the search in

that case involved a person rather than a motor vehicle; and because the confidential informant in

Velasco, unlike the informant in this case, had personally observed and actually participated in the

purchase of drugs from the defendant. Id., 80. *-there's another case. Ican use because of similarity*

The trial court concluded that the property was illegally seized without a warrant under

circumstances where a warrant was required, and ordered the contraband and personal effects

suppressed. Id., 80-81.

---

[3] The court also found there was no statement from the informant to police implicating himself as a
potential defendant, subject to arrest, for purchasing contraband from the defendant or Marlene. Id.

**Standard of Review:** Where the trial court's legal conclusions in granting a motion to suppress are challenged, this court determines whether they are legally and logically correct, and whether they find support in the facts set out in the memorandum of decision. State v. Velasco, 248 Conn. 183, 188 (1999) (citations omitted). The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. State v. Donahue, 251 Conn. 636, 642 (1999). Where the factual basis of the trial court's decision is challenged, this court must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. Velasco, 248 Conn. at 188. To the extent that the trial court has made findings of fact, review is limited to deciding whether those findings were clearly erroneous.

## ARGUMENT

## I. THE TRIAL COURT'S FINDINGS OF FACT WERE CORRECT AND WERE NOT CLEARLY ERRONEOUS.

As noted above, this court reviews the trial court's factual findings to determine whether they are clearly erroneous.

A finding of fact is clearly erroneous when there is no evidence in the record to support it ... or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed ... Because it is the trial court's function to weigh the evidence and determine its credibility, [the reviewing court] gives great deference to its findings.

State v. Ellis, 232 Conn. 691, 700-01 (1995) (citations omitted).

The state claims repeatedly that the trial court made findings of fact which are unsubstantiated by the record, and relied upon facts not in evidence. st.br. i, 2, 3, 9, 12, 20-21, 26. It never identifies any fact not in evidence upon which the court allegedly relied; that claim should be disregarded.

8

Examination of its brief reveals only two sentences which the state claims contain incorrect factual findings. ("The police officer[s] determined that the defendant was Emanuel B. Smith, Jr. after apprehending him and seeing a pager and some cash." st.br.2, 20.) ("There was no surveillance by the police prior to the search to corroborate the confidential informant's information that in fact drugs were contained inside the motor vehicle." st.br.2, 20.)

The defendant agrees that the first of these findings is in error, and that the police recognized the defendant slightly earlier than the court found. This error does not undermine the correctness of the trial court's legal conclusions. In the circumstances of this case, whether the police recognized the defendant during the course of the pursuit or after they apprehended him is immaterial, and does not affect the conclusion that there was no legal basis to conduct a warrantless search of the automobile.

The second claim of an incorrect finding stems from a misunderstanding on the part of the state. The court wrote: "There was no surveillance by the police prior to the search to corroborate the confidential informant's information that in fact drugs were contained inside the motor vehicle." Memo, 79. The state interprets this sentence to mean that the court made a factual finding that no surveillance *occurred* prior to the search. It is obvious both from reading the complete sentence and from the context within which that sentence appears in the memorandum, that this interpretation is incorrect. The court says that no surveillance "in fact" corroborated the information. In other words, the court found that surveillance *did* occur prior to the search, but that the surveillance which occurred did not corroborate the tip that drugs were contained in the vehicle.

The correctness of this interpretation is buttressed by the findings which precede the sentence at issue. The sentence appears on the seventh page of the memorandum, after a lengthy, accurate

9

rendition of the testimony, including findings concerning the surveillance. For example, four pages

before the challenged sentence, the court wrote:

> The officer set up a surveillance following receipt of that information. Upon arrival at the
> location the officers' (sic) confirmed the information provided by the confidential informant
> with respect to the location and description of the motor vehicle and the presence of a black
> male fitting the description. The surveillance was conducted for a period of about fifteen
> minutes. During (sic) which time no drugs were seen by the police officer nor were any
> transactions observed.

Memo, 75. Thus, it is clear that the court did not erroneously find that no surveillance took place, but

rather that it correctly found that the surveillance which did occur did not corroborate the tip that

drugs were in the car. The state is left with a single, inconsequential mistake of fact.

The defendant fully narrated both the evidence and the court's factual findings at pages 1-6,

above. The following chart compares the court's factual findings with the officer's testimony. It is

clear from this comparison that the factual findings were correct and not "clearly erroneous."

| TRIAL COURT'S FINDINGS | EVIDENCE SUPPORTING FINDINGS |
|---|---|
| Eisenstein veteran officer; received information from confidential informant. Memo, 74. | Eisenstein testified policeman 20 years; received information from confidential informant.T38, 41. |
| Informant said gray Olds Cutlass, CT registration 679 MBX parked at public housing residence 186 Greenwich Ave. Memo, 74. | Eisenstein testified informant said old gray Olds Cutlass, 2 door, blue vinyl roof, CT 679 MBX in public housing lot, 186 Greenwich Ave.T41. |
| Eisenstein worked with informant since 1990; reliable information > 10 times; 30+ successful arrests, seizures, convictions. Memo, 74. | Eisenstein testified had worked with informant since 1990, knew him to be credible; had been reliable approximately 30 times. T41-42. |
| Informant was known drug user; had prior arrests for drug possession and pending case in Stamford JD. Memo, 76. | Eisenstein testified informant arrested by Stamford Police in past; had possession of narcotics case pending. T49, 52. |
| Informant told Eisenstein car contained unspecified amount of crack cocaine. Memo, 74. | Eisenstein testified informant told him inside car was "unspecific" amount of crack cocaine. T42. |
| Informant said car operated by unknown black male; 6', over 200 lbs., in company of female known to informant as Marlene. Memo, 74-76. | Eisenstein testified informant said car operated by black male, approximately 6', over 200 lbs. in company of female referred to as Marlene. T42. |
| Informant did not say defendant or Marlene handled drugs. Memo, 76. | Eisenstein did not know if informant ever saw Marlene handling any drugs. T51. |
| Informant never bought drugs from defendant or Marlene. Memo, 76. | Eisenstein did not testify informant bought drugs from defendant or Marlene. T38-68. |

10

| | |
|---|---|
| Informant never saw drugs being placed in car. Memo, 76. | Eisenstein testified informant never saw drugs being placed in car or in car. T51, 65. |
| Informant did not witness or participate in the (sic) crime. Memo, 76. | Eisenstein testified informant claimed overheard conversation; was never at car; never saw drugs. T43, 51, 65. |
| Officer went to location; saw car and man fitting description. Memo, 75. | Eisenstein testified he went to location; saw black male who matched suspect. T 43-44, 46-47. |
| Officer watched for 15 minutes; no transactions or drugs observed. Memo, 75. | Eisenstein testified watched for 15 minutes; no one but defendant approached car. T50. |
| Officer saw black male fitting description approach car, lean down from waist to driver's side of car. Memo, 75. | Eisenstein testified he saw black male fitting description approach car, lean down from waist on driver's side. T43-47. |
| Man was later identified as defendant. Memo, 75. | Eisenstein testified man was later identified as defendant. T43-44. |
| Police determined car registered to someone other than defendant or his companion. Memo, 76. | Eisenstein testified car registered A.A. Dozier. T57-58. |
| Car was unoccupied and locked. Memo, 76-77. | Eisenstein testified car unoccupied and locked. T43-45. |
| Police moved in; defendant fled on foot. Memo, 75. | Eisenstein testified police moved in; defendant fled on foot. T44, 61. |
| Defendant attempted to cross bridge; was apprehended approximately 100' from car. Memo, 75. | Eisenstein testified defendant attempted to cross bridge; was apprehended approximately 100' from car. T44-45. |
| Defendant fought police. Memo, 75. | Eisenstein testified defendant fought police. T45. |
| Defendant was subdued and keys taken from him. Memo, 75-76. | Eisenstein testified defendant wrestled to ground and handcuffed; keys seized from him. T45. |
| No drugs found on defendant's person. Memo, 76. | Eisenstein testified only thing in defendant's hand was keys; never any drugs. T45, 61, 64. |
| Police seized pager and cash from defendant's person. Memo, 76. | Eisenstein testified pager and $93 seized from defendant's person. T64. |
| At the time of the search and seizure the car was unoccupied and locked. Memo, 76-77. | Eisenstein testified opened car with keys. T45. |
| Contraband not seen by police in plain view. Memo, 77. | Eisenstein testified narcotics found under floor mat. T46. |

In reality, with the single minor exception noted above, the trial court's findings of fact were correct, were based upon the evidence, and contained no facts not in evidence.

## II. THE TRIAL COURT'S LEGAL CONCLUSIONS WERE LEGALLY AND LOGICALLY CORRECT IN LIGHT OF THE FINDINGS OF FACT.

**Introduction:** The state argues that "because the trial court relied upon factual findings which were not supported by the evidence, its legal conclusion was clearly erroneous". st.br.20 (capitalizations altered to lower case letters). This assertion is factually incorrect and improperly applies the "clearly erroneous" standard.

The clearly erroneous standard applies not to legal conclusions, but to the trial court's factual findings.

> A *finding of fact* is clearly erroneous when there is *no* evidence in the record to support it ... *or* when although there is evidence to support it, the reviewing court on the entire evidence is left with the *definite and firm conviction that a mistake has been committed* ... Because it is the trial court's function to weigh the evidence and determine its credibility, [the court] gives *great deference* to its findings.

State v. Ellis, 232 Conn. 691, 700-01 (1995) (emphasis added) (citations omitted).

The defendant demonstrated earlier in this brief that the trial court's factual findings were correct and manifestly supported by the evidence; he need not reiterate the particulars here. It is settled law that the trial court's legal conclusions must stand unless they are legally and logically inconsistent with those facts. State v. Donahue, 251 Conn. at 642 (citations omitted). In the instant case, in light of the findings of fact and the correctness of those findings, the trial court's legal conclusions were legally and logically correct and must stand.

Article first, §7 of the state constitution provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

The fourth amendment to the federal constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article first, §7 affords protections to the citizens of this state beyond those provided by the fourth amendment to the federal constitution. State v. Wilkins, 240 Conn. 489, 505 (1997) citing, inter alia, State v. Miller, 227 Conn. 363, 379, 630 A.2d 1315 (1993). A search conducted without a warrant is *per se* unreasonable, subject only to a few specifically established and well-delineated exceptions. State v. Badgett, 200 Conn. 412, 4223-24, cert. den. 479 U.S. 940, 107 S.Ct. 423 (1986).The burden is on the state to establish an exception to the warrant requirement. Id., 424.

The trial court specifically concluded that the warrantless search of the automobile in this case violated article first, §7 of the state constitution. Memo, 81. The state has failed to assert a separate challenge to the trial court's conclusion that the defendant's state constitutional rights were violated, and has failed to supply any separate analysis of the claimed state constitutional error. In that the state constitution afforded the defendant greater protection than does the federal constitution, and in light of the trial court's conclusion that state constitutional rights were violated here, the state was required to separately brief the claim of state constitutional error. This court should uphold the trial court's legal conclusions predicated on the state constitution, on the basis of the state's failure to properly raise and analyze any challenge to those conclusions. It should also uphold them, of course, because they are legally and logically correct.

In Carroll v. U.S., 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court held that a roadside warrantless search of an automobile does not violate the fourth amendment, *if the police had probable cause* to search the car *and* if obtaining a warrant would be impracticable because it might be moved out of the jurisdiction. "The exception to the warrant requirement in an automobile

search demands that the searching officer have probable cause to believe that the vehicle contains contraband. Carroll v. U.S., 267 U.S. at 153-54; State v. Badgett, 200 Conn. at 429. Connecticut recognizes the automobile exception announced in Carroll as a matter of state constitutional law. State v. Dukes, 209 Conn. 98 (1988).  –

The constitutional preference for warrants reflects a goal of protecting citizens from unjustified police intrusions by interposing a neutral decisionmaker between the police and the object of the proposed search. See State v. Diaz, 226 Conn. 514, 544-47, 628 A.2d 567 (1993); State v. Jackson, 162 Conn. 440, 444, 294 A.2d 517, cert. den. 409 U.S. 870, 93 S.Ct. 198, 34 L.Ed.2d 121 (1972). The constitutional preference for warrants is overcome only in specific and limited circumstances, which "derive primarily from acknowledged interests in protecting the safety of the police and the public and in preserving evidence." State v. Miller, 227 Conn. at 383. See, e.g., State v. Geisler, 222 Conn. 672 (1992) (recognizing emergency exception as matter of state constitutional law); State v. Delossantos, 211 Conn. 258, 266-67, 559 A.2d 164, cert. den. 493 U.S. 866, 110 S.Ct. 188, 107 L.Ed. 2d 142 (1989) (recognizing exception for search of interior passenger compartment of car incident to lawful custodial arrest so long as arrestee is *occupant* of the car, and is *detained at the scene*, as matter of state constitutional law); State v. Dukes, 126 (recognizing automobile exception *on the highway* as matter of state constitutional law).

Even where probable cause does exist, this court's "precedents involving the state constitution's warrant requirement express a strong policy in favor of warrants that supports the ... conclusion that article first, §7, provides broader protection than does the fourth amendment against warrantless searches of automobiles" Miller, supra, 227 Conn. at 382 (relating to automobile impounded at police station). A court judges "the permissibility of a particular law enforcement

14

practice by balancing its intrusion on the individual's interests against its promotion of legitimate state governmental interests, and examine the intrusion to determine whether it is the *minimum search necessary under the circumstances.*" State v. Wilkins, 240 Conn. 489, 503 (1997), citing State v. Lamme, 19 Conn. App. 594, 599, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990). (emphasis added; other citation omitted).

In Miller, the state argued that a warrantless search of a car impounded at the police station should be permitted. 227 Conn. at 383-84. The court noted that the state relied on the fictitious argument that the legitimate safety concern that may necessitate towing an automobile from the site of its seizure to the police station also provides justification for the warrantless search of that car at the station. "These fictions are inconsistent with our constitutionally mandated preference for warrants." State v. Miller, 227 Conn. at 384. Indeed, it found that "a search is invalid if the police, without a justification rooted in a valid exception to the warrant requirement, have relied upon only their own probable cause evaluation, *even if later found to be correct,* before searching." State v. Miller, 227 Conn. at 382-83 (emphasis added).

**A. The Trial Court Correctly Concluded That the Warrantless Search Was Not Justified As A Search for Fruits or Instrumentalities of a Crime Because There Were Neither Probable Cause Nor Sufficiently Exigent Circumstances to Excuse Obtaining a Warrant.**

The trial court found that a warrantless search of an automobile is permitted when police have probable cause to do so. Memo, 78-79. It considered the totality of the circumstances, and found that there was no such probable cause in this case. Memo, 79. Specifically, the court found that both the veracity and the basis of knowledge of the confidential informant were at issue, and that the surveillance conducted by police did not supply corroboration that drugs were in the vehicle. Memo, 79. These legal conclusions were legally and logically correct.

15

The analysis used to determine whether information supplied by a confidential informant satisfies the constitutional requirement of probable cause is the same under both article I §7 of the state constitution and amendment IV of the U.S. Constitution. Velasco, 248 Conn. at 192 (citation omitted). That analysis involves a totality of circumstances, allowing the court to consider all relevant evidence. Both the informant's veracity and basis of knowledge remain highly relevant aspects of the totality of the circumstances. Velasco, 248 Conn. at 192 (citations omitted).

The informant, who himself had a pending drug case, gave police descriptions of a man, a car, and a location. He claimed to have overheard conversation between this man and a woman indicating the presence of drugs in this car. He did *not* claim to have ever seen any drugs, nor to have ever *bought* drugs from either this man or this woman, or even to have ever seen either of them in possession of drugs. The police surveillance seemed to corroborate the existence of the man and the car in the location, *nothing corroborated the presence of any drugs*. The police did not observe the defendant in possession of any drugs, nor did they observe any drug transactions, nor did they see drugs in plain view. In short, the trial court found that the aspect of the informant's tip which required corroboration to supply probable cause, was *not* corroborated.

The state argues that the trial court "improvidently" determined that there was no probable cause to search the car. st.br.9. It recounts the details of the descriptive information at length. However, nothing observed by police during the surveillance corroborated the informant's claim *that there were narcotics* in the car. This is the heart of the matter, yet the state fails to grapple with it. The best it can do is make the peculiar assertion that whether narcotics were in the car was a "fact that could only be verified *after* the police had searched the car." st.br.14 (emphasis added).

16

The state argues that because "the police had adequate probable cause to *arrest* the defendant *after he fled from the Cutlass*, and their arrest was a lawful custodial arrest", the warrantless search of the car was incident to that arrest and valid. st.br.26 (emphasis added). This assertion implies that the flight supplied probable cause which was otherwise missing, but this is obviously neither the case nor the law. See State v. Oquendo, 223 Conn. 635, 653-57 (1992).

Probable cause requires more than mere suspicion. While the informant's tip was a permissible starting point, the trial court correctly found that it was not followed by sufficient corroborative behavior to raise the totality of the circumstances from the level of suspicion to the level of probable cause. The state has failed to establish error, and the trial court's legal conclusion that there was no probable cause must stand.

In addition to finding an absence of probable cause, the trial court also concluded that there were no exigent circumstances for the warrantless search of the car, which was locked and unoccupied. Memo, 79. This conclusion, too, was correct, and the state can point to nothing other than the latent mobility of every vehicle in claiming otherwise.

> We tolerate the warrantless on-the-scene automobile search *only* because obtaining a warrant would be impracticable in light of the inherent mobility of automobiles and the latent exigency that that mobility creates. The balance between law enforcement interests and individuals' privacy interests thus tips in favor of law enforcement in the context of an on-the-scene automobile search. If the impracticability of obtaining a warrant no longer exists, however, our state constitutional preference for warrants regains its dominant place in that balance, and a warrant is required.

State v. Miller, 227 Conn. 363, 384-85 (1993) (citation omitted).[4]

---

[4] In Miller this court noted the Oregon Supreme Court's holding that pursuant to its constitution, although searches of vehicles which had just been lawfully stopped could be searched without a warrant and without a demonstration of exigent circumstances, so long as there was probable cause to believe they contained contraband or crime evidence; searches of parked, immobile vehicles, unoccupied when police first encounter them, must be authorized by warrant or exigent circumstances

The state is not able to point to anything other than the bald fact that the object of the search was an automobile, to support its claim of exigent circumstances. If the mere fact that the object of the search was a vehicle amounted to sufficiently exigent circumstances, in and of itself, then *every* vehicle could be searched without a warrant. It does argue that in this case exigent circumstances "presented themselves as the situation developed", but fails to explain how this could be so. st.br.15. The car was no more mobile, and the drugs no more destructible, "as the situation developed" than they were before it began. On the contrary, the situation which developed was that the defendant ran *away* from the car, was arrested 100 feet from it, and remained in custody. Once the defendant was arrested and the keys seized from him, any exigency which *did* exist was greatly *reduced*. The car was locked, and its owner was in prison. The police easily could have posted an officer to guard the car, or could have had it towed and impounded, while they obtained a warrant to search its contents. They chose not to do so.

~~The trial court concluded that there was no probable cause in this case.~~ The absence of probable cause renders a warrantless search unreasonable, despite the any exigency created solely by the mobility of automobiles. State v. Badgett, 200 Conn. at 429 (citations omitted) ~~Of course, the trial court~~ also concluded that no exigent circumstances justified this warrantless search. ~~The trial court's conclusion that there were no exigent circumstances to justify a warrantless search was legally and logically correct~~ the state has not been able to satisfy its burden to show otherwise.

**B. The Search of the Car Was Not Incident to a Valid Arrest.**

A search incident to lawful arrest involves the person being arrested and the area within that person's immediate control. State v. McClain, 171 Conn. 293, 297 (1976), citing Chimel v.

---

other than potential mobility. State v. Kock, 302 Or. 29, 33, 725 P.2d 1285 (1986).

California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969). The state asserts that the search of the car was incident to a contemporaneous valid arrest of a person located in or near the vehicle, and so was justified. st.br.9, 22. This argument overlooks entirely the fact that the defendant was arrested 100 feet away from the car and was separated from it by a fence; even legal fiction can not stretch so far as to find that this car was within this defendant's immediate control. The state's argument also overlooks the fact that the arrest upon which the search is predicated was not a "valid arrest," as will be shown. In actuality, neither the pursuit of the defendant into the fenced construction yard and the struggle to subdue him, nor the subsequent search of the locked, unoccupied car 100 feet from the scene of the arrest were justified by law. *nor did state prosecution present the charge to the court*

**1. The Arrest Itself Was Not Valid.** *nor was probable cause found at arraign-ment*

The defendant was arrested for the misdemeanor of interfering, and transported to the car by police. They searched the car and found narcotics, giving rise to the narcotics charges. Because his *and no probable cause found at arraignment* initial arrest for interfering was illegal, there could be no valid search incident to that arrest. Of course, an arrest for narcotics offenses could not validly exist until narcotics were found, but the narcotics were the product of the illegal search of the car. The state concedes that there could not have been an arrest for narcotics until narcotics were found. st.br.14.

The police had insufficient basis to pursue the defendant – which was itself a seizure – and to *if there was not an allege struggle* place their hands upon him. Had he not struggled, there could have been no pretextual arrest at all. ~~Indeed,~~ the state conceded as much ~~at trial~~. ("[W]hen police officers went and attempted to talk to and effectuate an arrest on Mr. Smith, *his mere flight [wa]s not a crime until the struggle ensued*, which [wa]s an interfering ... a crime had occurred *at that time*." *an allege crime had occurred at that time* T4/1/99 p.29 (emphasis added).) The

police pursued this defendant on the basis of behavior which did not supply probable cause, and his subsequent arrest for resisting that illegality was even more invalid.

The state places great reliance on the asserted fact that two judges found probable cause for the defendant's arrest. However, there is a critical defect in the prosecution for interfering, the predicate offense from which the entire prosecution stemmed, which the state has overlooked. Specifically, the defendant was arrested without a warrant, and presented in the trial court. However, the trial court (Tobin, J.) failed to find probable cause for the defendant's arrest for interfering, as required by Practice Book §37-12. T8/27/98 p.1; R. It did find probable cause for the defendant's arrests on the narcotics counts. T8/27/98 p.1, st.br.22. Thereafter, the trial court (Rodriguez, J.) proceeded with the understanding that it was required to give deference to Judge Tobin's finding; however, no finding actually exists as to the interfering count. T4/1/99 31-32.[5] To the extent that Judge Rodriguez made an independent finding of probable cause, the record is ambiguous as to whether it applied to the misdemeanor interfering or only the narcotics counts. Id. Thus, there exists a fatal defect in the prosecution for the "underlying" count of interfering, from which the prosecution for the narcotics charges flowed.

The defendant suggests that if Judge Rodriguez found probable cause that finding was erroneous, and that this court should find that the arrests were not valid, as an alternative basis upon which to uphold the suppression of the seized items and dismissal of all charges. The record is adequate to supply the court with the basis for such a finding.

---

[5] Although the state represents in its Nature of its Proceedings that the Judge was Judge Cocco, the transcript shows that it was actually Judge Tobin.T8/27/98. See also T4/1/99 p.11 line 14. The state misunderstood line 3 of that page because it overlooked line 4. In any event, the judge did *not* find probable cause for the arrest on the misdemeanor count of interfering; thus, there was no finding to which deference was due. T8/27/98 p.1; R.

635, 654 (1992) (citation omitted). Certainly, there was no probable cause to arrest the defendant for narcotics until *after* he was chased and arrested for interfering, and he did not "interfere" until he had been not only pursued illegally, but caught.

At the point in time when the three policemen initiated their pursuit of the defendant – prior to the moment when they caught him and he struggled -- they had no basis upon which to arrest him, which the state appears to concede. (That police would find narcotics "could only be verified *after the* police had searched the car." st.br.14.) Certainly, his flight alone did not supply a basis for arrest, either for interfering or for narcotics. "While a suspect's flight may, in certain cases, be considered in determining whether there exists a reasonable and articulable basis of suspicion ... police conduct that *provokes* flight precludes the consideration of this factor ... Were it otherwise, the officer could use the suspicious conduct that he himself induced as evidence that the defendant was acting suspiciously." Oquendo, supra, 223 Conn. at 656 (emphasis in original) (internal quotation marks/ citations omitted).

The police pursuit of the defendant into the construction yard and restraint of his person were illegal, in and of themselves. See State v. Oquendo, 223 Conn. at 653; State v. Donahue, 251 Conn. 636, 642-43 (1999) (under state constitution, a person is defined as seized when by means of physical force or show of authority by police his freedom of movement is restrained; reasonable person in defendant's position would believe he was not free to leave).

That seizure culminated in the defendant's custodial arrest for interfering; *not* for narcotics offenses. Obviously, *at the time the police engaged in pursuit* of him, they did not have any basis to arrest him for interfering. It was not until after the illegal arrest and the search of the car, incident to that *invalid* arrest, that the police had a basis to arrest for narcotics charges. Thus, the search cannot be upheld as incident to a lawful arrest.

22

Had the defendant not run when the police approached him, it cannot seriously be argued that they would have had sufficient basis to arrest him, *prior to* searching the car. It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. Sibron v. New York, 392 U.S. 40, 63, 88 S. Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). Reasoning which justifies the arrest by the search and the search by the arrest just "will not do." Johnson v. U.S. 333 U.S. 10, 16-17, 68 S.Ct. 367, 370, 92 L.Ed. 436 (1948). "The exception for searches incident to arrest permits the police to search a lawfully arrested person and areas within his immediate control. ... it does not permit the police to search any citizen without a warrant or probable cause so long as an arrest immediately follows." Smith v. Ohio, 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990).

**2. The Search Of The Car Was Not Incident to The Defendant's Arrest In the Construction Yard.**

In New York v. Belton, 453 U.S. 454, 461, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the U.S. Supreme Court held that a *lawful* custodial arrest justifies a contemporaneous search of the passenger compartment of an automobile. In Badgett, this court held that where the defendant is restrained as the result of a lawful custodial arrest *and he remains at the scene* of the arrest, his vehicle may legally be searched incident to the arrest. 200 Conn. at 428. "[T]he right of a police officer to search the vehicle ceases *the instant the arrestee departs the scene* because the arrestee's removal forecloses any possibility that he could reach for an article within the vehicle." Badgett, 200 Conn. at 428. "When police make a lawful custodial arrest of an occupant of an automobile, *and the arrestee is detained at the scene*, police may contemporaneously search without a warrant the interior passenger compartment of the automobile." State v. Delossantos, 211 Conn. 258, 266-67, 559 A.2d 164, cert. den. 493 U.S. 866, 110 S.Ct. 188, 107 L.Ed.2d 142 (1989) (emphasis added).

23

The reason searches incident to lawful arrest are an exception to the warrant requirement is to provide for the safety of the arresting officer and to preserve evidence that is easily concealable or destructible. <u>Chimel v. California</u>, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969); <u>State v. Badgett</u>, 200 Conn. at 425. A "contemporaneous search" implies a situation where the police officer must make an immediate assessment of the danger because the accused is so near the car that it would be dangerous not to search. <u>State v. Waller</u>, 223 Conn. 283, 295 n.1 (1992) (Berdon, J., dissenting). As will be seen, the reasons for the exception did not apply here.

The trial court in this case found that the basis for the defendant's arrest was resisting arrest. Memo, 80.[8] The court concluded that there was a search which was incident to the defendant's arrest – the search of the defendant's person, in the construction yard. Memo, 80. It found that this arrest occurred 100 feet from the car. Memo, 75.[9] It further found that the search incident to arrest did not yield any contraband. Id.

The state concedes that the defendant must be on the scene at the time of the search. st.br.24. It argues that the search of the car was valid here because it took place "immediately after a valid arrest for interfering" and incident to a contemporaneous valid arrest of a person located "in or near the vehicle", pursuant to <u>Belton</u>, 453 U.S. 454 and <u>Badgett</u>, 200 Conn. 412. st.br.9-10.

The state overlooks the obvious: the defendant was not located in or near the vehicle when he was arrested – he was not "at the scene". Indeed, the police elected to return him to the scene, and then searched the car illegally. Clearly, the police were not concerned that the defendant would obtain

---

[8] Indeed, the trial prosecutor argued the defendant was arrested for "a crime of interfering with the officer *by fleeing* and actually fighting with that officer"; he was "placed... under arrest and t[a]ken ... back to the car"; the car was "searched ... in[cid]dent to the arrest." T70 (emp ad).

24

a weapon from the car or destroy evidence within that car, when they opted to remove him from the fenced-in construction yard where he had been cornered, and transported him not to a hospital or police station, but rather *back to the car*. Obviously, once police returned the defendant to the scene of the car, the search of the car could not have provided the police with any more safety than they already had when the defendant was detained, subdued, and handcuffed, 100 feet away. Similarly, any concerns they had about the quick destructibility of evidence were not satisfied by the illegal search. Even within the refined world of legal fiction, the defendant could not have concealed or destroyed evidence which was inside a locked car to which the police had the keys, and which was 100 feet removed from him on the other side of a fence. Thus, no basis for a search incident to arrest existed as to the search of the car.

The defendant has argued that his arrest was not valid. Even if this court were to assume, arguendo, that the arrest *was* valid, the search of the car cannot be upheld as incident to that arrest. As the trial court found and as is abundantly clear from the evidence, the defendant's arrest did not take place at the scene of the car, and the search which was incident to arrest did not yield anything illegal. The warrantless search cannot be upheld as incident to arrest.

## CONCLUSION AND STATEMENT OF RELIEF REQUESTED

Because the trial court correctly suppressed the evidence stemming from the illegal search of the car, the charges in this case were correctly dismissed and that dismissal should be affirmed.

---

[9] The fenced area of the construction yard was also bounded by the Rippawon River. T44-45. Officer Eisenstein testified "We all walked back to the vehicle and ... Officer Robinson remained with the prisoner and called for a uniformed car to come secure the prisoner." T45.

Respectfully submitted,

EMANUEL SMITH
DEFENDANT-APPELLEE

BY: *Lauren Weisfeld*
LAUREN WEISFELD
HIS ATTORNEY
JURIS. NO.401789
OFFICE OF CHIEF PUBLIC DEFENDER
2911 DIXWELL AVENUE
HAMDEN, CT 06518
(203) 867-6150 fax 867-6157

## CERTIFICATION OF SERVICE

Pursuant to Conn. Prac. Bk. §62-7 the undersigned certifies that a copy of this brief with attached appendix was mailed first class this 7th day of April, 2000 to Eileen Geel, Assistant State's Attorney, Juris No. 413546, Office of the Chief State's Attorney, 300 Corporate Place, Rocky Hill, CT 06067, tel. 860 258-5807, fax 860 258-5828; Hon. Eddie Rodriguez, c/o Chief Clerk, Stamford/Norwalk J.D., 123 Hoyt St. Ridgeway Station Stamford, CT 06905; and to the defendant, Emanuel Smith.

*Lauren Weisfeld*
Lauren Weisfeld
Attorney at Law Juris No. 401789

26

# SUPREME COURT

## OF THE

# STATE OF CONNECTICUT

S.C. 16254

**STATE OF CONNECTICUT**

**v.**

**EMANUEL B. SMITH**

APPENDIX