UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMMANUEL B. SMITH, JR, | : | PRISONER |
| | : | CASE NO. 3:03CV676(JCH) |
| *Petitioner* | : | |
| | : | |
| V. | : | |
| | : | |
| WARDEN JOHN TARASCIO, ET AL., | : | NOVEMBER 30, 2006 |
| *Respondent* | : | |

RESPONDENT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE PETITION

This memorandum is submitted in support of the respondent's motion to dismiss the amended petition for writ of habeas corpus [Doc. # 12] filed in the above-captioned proceeding (hereinafter "petition"). In this case, the petitioner raises a single, exhausted claim of error. He also invites this Court to consider several unexhausted claims, *if possible*. His exhausted claim raises a Fourth Amendment challenge to the police seizure of eleven bags of crack cocaine. Review of this claim is barred by the Supreme Court's holding in *Stone v. Powell.* The remaining claims have not been exhausted in the state courts. As a result, the petition must be dismissed.

**I.     PROCEDURAL HISTORY**

This procedural history is compiled from documents forwarded as appendices to the respondent's Motion to Dismiss dated November 30, 2006, as follows:

Appendix A   Decision of the Connecticut Supreme Court on State's appeal of the trial court's suppression of evidence; *State v. Smith,* 257 Conn. 216, 777 A.2d 182 (2001) *(Smith I)*

Appendix B   Decision of the Connecticut Appellate Court on direct appeal; *State v. Smith,* 94 Conn. App. 188, 891 A.2d 974 (2006) *(Smith II)*

Appendix C   State habeas petition and petitioner's brief to the Connecticut Appellate Court in the pending state habeas corpus action *Smith v. Commissioner of Correction,* A.C. 27176

In the Superior Court for the judicial district of Stamford-Norwalk, the petitioner was charged with possession of narcotics in violation of Connecticut General Statutes § 21a-279(a), possession of narcotics with the intent to sell by a person who is not drug-dependant in violation of § 21a-278(a), and possession of narcotics with the intent to sell within 1500 feet of public housing in violation of § 21a-278a(b). The petitioner moved to suppress eleven bags of crack cocaine on the ground that the seizure of such evidence violated his rights under the Fourth Amendment. The trial court granted his motion. The State appealed that ruling. On July 31, 2001, the Connecticut Supreme Court reversed the judgment of the trial court and remanded the case for further proceedings. *State v. Smith,* 257 Conn. 216, 777 A.2d 182 (2001) (hereinafter *"Smith I"*).

Subsequently, the the petitioner was convicted after a jury trial, *Kavanewsky J.,* presiding, of possession of narcotics in violation of General Statutes § 21-279(a). On January 31, 2003, the trial court sentenced him to seven years incarceration.

The petitioner appealed. On March 7, 2006, the Connecticut Appellate Court affirmed the judgment of conviction. *State v. Smith,* 94 Conn. App. 188, 891 A.2d 974 (2006) (hereinafter *"Smith II"*). The petitioner then filed a petition seeking discretionary review by the Connecticut Supreme Court. On April 19, 2006, the Connecticut Supreme Court denied review. *State v. Smith,* 278 Conn. 906, 897 A.2d 100 (2006).

Meanwhile, in May 2003, the petitioner filed a petition for writ of habeas corpus in state court. *Emmanuel Smith v. Warden Tarascio–BCC,* Docket No. CV03-0403151,

Superior Court in the judicial district of Bridgeport. On October 17, 2005, the state habeas court granted the respondent's motion to dismiss the petition. The petitioner appealed. *Emmanuel Smith v. Commissioner of Correction,* A.C. 27176. His brief was filed in the Connecticut Appellate Court on June 7, 2006. *See* Appendix C. The respondent's brief was filed on October 11, 2006. This appeal remains pending.

The petitioner commenced the instant habeas corpus proceeding brought under 28 U.S.C. § 2254 when he filed his initial petition on April 11, 2003.[1]

## II.   FACTS UNDERLYING THE PETITIONER'S CONVICTION

On direct appeal, the Connecticut Appellate Court determined that the jury reasonably could have found the following facts.

> Larry Eisenstein, Douglas Robinson and Wayne Scuteri are Stamford police officers experienced in narcotic and organized crime investigations. On the morning of August 26, 1998, Eisenstein received information from a confidential informant that two individuals intended to transport crack cocaine to a public housing project at 186 Greenwich Avenue in Stamford. Earlier that day, the informant, a drug user, had been in the company of the defendant, whose name he did not know, and a woman named Marlene. While the informant was in the presence of these two individuals, he overheard them discuss a quantity of crack cocaine that they planned to take to 186 Greenwich Avenue that day. The informant told Eisenstein that the pair would be in a blue Oldsmobile Cutlass bearing Connecticut license plate 679 MBX, operated by the defendant. The informant described the defendant as a black male, who was more than six feet tall, weighing more than 200 pounds, dressed in a black T-shirt, blue jeans and white sneakers.

---

[1] In its Order to Show Cause [Doc. # 16-1], the Court requested that the respondent address "whether the claim in the amended petition is barred by the statute of limitations." Given the procedural history outlined above, it appears that the statute of limitations has not begun to run. The time during which the petitioner's direct appeal and his state post-conviction proceedings are pending is excludable for statute of limitations purposes. *See* 28 U.S.C. §§ 2244(d)(1)(A) and 2244(d)(2).

Eisenstein knew the informant well, having worked with him for a number of years, and depended on him to provide credible and reliable information.

The officers established surveillance of 186 Greenwich Avenue. Eisenstein and Robinson were in an undercover van parked in a public parking lot across the street from 186 Greenwich Avenue. Scuteri was in an undercover sedan in a nearby parking lot. The officers communicated via radio. At approximately 12:15 p.m., Eisenstein saw a man fitting the description of the male provided by the informant exit 186 Greenwich Avenue and approach a blue Oldsmobile Cutlass with license plate 679 MBX in the building's parking lot. The man opened the driver's door with a key and reached down to the floor of the driver's side of the vehicle. Eisenstein ordered Scuteri to drive into the parking lot of 186 Greenwich Avenue and intercept the defendant. The defendant saw Scuteri enter the parking lot. Although Scuteri was dressed in plain clothes and operating an unmarked vehicle, the defendant recognized him as a police officer from previous, unrelated encounters. The defendant ran toward adjacent premises. Scuteri exited his vehicle, identified himself as a police officer and told the defendant to stop. The defendant disregarded the order and kept running. Scuteri returned to his vehicle and pursued the defendant. Eisenstein and Robinson also followed the defendant in their vehicle. The officers cornered the defendant, who resisted arrest. After the officers subdued the defendant, they conducted a patdown search and found $93 and a pager on his person. Eisenstein seized the key to the Oldsmobile that was in the defendant's hand.

Eisenstein used the key to open the Oldsmobile. Under the driver's floor mat, Eisenstein found a cellophane wrapper containing eleven small ziplock bags. On the basis of his professional experience and training, Eisenstein believed that the bags contained crack cocaine. Subsequent field and laboratory testing confirmed that the bags contained crack cocaine. A Fleet Bank statement was in plain view on the front passenger's seat. Scuteri used the key to open the glove compartment and found a checkbook and register, bank deposit slips and transaction receipts. Scuteri seized all of the bank documents, which bore the defendant's name and address.

The Oldsmobile was registered to Andre Dozier. Marlene told the officers that the defendant had used the Oldsmobile to transport her from Stillwater Avenue to 186 Greenwich Avenue that day.

> The defendant was charged with possession of narcotics in violation of § 21a-279(a), possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278(a) and possession of narcotics with the intent to sell within 1500 feet of public housing in violation of General Statutes § 21a-278a(b). After the state presented its case, the defendant moved for a judgment of acquittal, which was denied. He presented no evidence. The jury found him guilty of possession of narcotics, and he was sentenced to seven years incarceration.

(Footnotes omitted.) *Smith II*, 94 Conn. App. at 189-92.

## III. ARGUMENT

In his petition, the petitioner raises a several grounds for relief. His only exhausted claim challenges the search of a vehicle that he was using and the seizure of eleven bags of crack cocaine. Specifically, the petitioner articulates his grounds for relief, as follows:

> Exhausted Fourth Amendment claim. Note–attached is a page asking if at all possible could the four grounds for habeas relief be added through Sixth Amendment claim of ineffective counsel based on deficient representation in litigation [of] Fourth Amendment fundamental fairness issue. If not, I would like to proceed on the single exhausted fourth amendment claim. Thank you for your time.

Petition [Doc. # 12] at 10.

> The petitioner then briefly discussed the facts supporting his claim, as follows:

> At my arraignment there was no determination of probable cause for charge interfering 53a-167, which was the reason for my original arrest and incident to search of a car that I was not a occupant not positively linked to. Also the automobiles owner was determine during the fifteen minutes of surveillance, that owner being Acarde [Andre] Dozier. In addition I was [recognized] by one officer name Larry Eissenstein over a 100 feet away, in a fenced in construction yard. I was searched incident to arrest and did not yield any contraband. After arrest, police opted to remove me from the fenced in construction yard over a 100 feet away from the car and transport me handcuff not to a hospital or a police station, but rather to the lock car belonging to Acarde Andre Dozier. Also I'm being made to suffer because I'm addicted at the time to narcotics. In Officer Larry Eissenstein statement,

he said that informant never provided information that Marlene handle drugs (note in the police report it states something different that shows that police lied in the statement under oath to the court) on date 8-26-98 the police took action to create a problem to justify search and seizure. Also police stated that I was seen doing nothing wrong on the date 8-26-98. This statement was given on 4-6-99.

Petition [Doc. # 12] at 10.

### A. The Petitioner Is Not Entitled To Review Of His Fourth Amendment Claim

Essentially, the petitioner claims that the Connecticut Supreme Court's determination that his Fourth Amendments rights were not violated (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).[2] This Court cannot review the merits of his claim, however, because the issue involves an interpretation of the Fourth Amendment and the potential application of the exclusionary rule. In 1976, the Supreme Court prohibited the application of the exclusionary rule to Fourth Amendment claims raised in post-conviction proceedings. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). As a result the petitioner's claim must be dismissed.

---

[2] Justice O'Connor delivered the opinion of the Court with respect to Part II in which it determined that the Antiterrorism and Effective Death Penalty Act (AEDPA) modified the role played by federal habeas courts in reviewing petitions filed by state prisoners and interpreted § 2254(d)(1). Justice Stevens delivered the opinion of the Court with respect to Parts I, III, and IV.

6

### 1. Facts pertaining to the petitioner's claim

In addressing the petitioner's Fourth Amendment claim, the Connecticut Supreme Court adopted the relevant factual findings of the trial court before it addressed the petitioner's Fourth Amendment claim, as follows:

> The trial court, in its oral decision, documented by way of the transcript, found the following facts: "Officer Larry Eisenstein, a veteran member of the Stamford police department together with some colleagues, received information from a confidential informant. Officer Eisenstein was on duty, received a call from a confidential informant who said a motor vehicle was parked at 186 Greenwich Avenue [Stamford], a public housing residential building. [The informant] said that a car was in the lot described as an Olds[mobile] Cutlass . . . bearing Connecticut registration 679 MBX. Officer Eisenstein [had] work[ed] with the confidential informant since 1990 and recently and [on] over ten occasions received reliable information leading to the successful arrest, seizure and convictions of other defendants, and in excess of thirty since 1990.
>
> "The informant provided Officer Eisenstein with information that the said motor vehicle contained an unspecified quantity of contraband, specifically, crack cocaine inside of the motor vehicle. The confidential informant further stated that the vehicle was operated by a black male who was described as 6 feet, over 200 pounds, who was in the company of a female known to the confidential informant as Marlene.
>
> "The officer set up a surveillance following the receipt of that information. Upon arrival at the location the [officers] confirmed the information provided by the confidential informant with respect to the location and description of the motor vehicle, and the presence of a black male fitting the description. The surveillance was conducted for a period of about fifteen minutes. During which time no drugs were seen by the police officer nor were any transactions observed.
>
> "But the police officer did observe a black male fitting the description later found and identified as the defendant . . . approaching the vehicle leaning down from his waist to the driver's side of the motor vehicle.

"The police moved in and [the defendant] fled on foot, and he attempted to cross a bridge. He was apprehended approximately 100 feet from the location of said motor vehicle. The defendant fought the police who identified themselves as police officers with a badge plainly displayed during the pursuit and during the resistance. The defendant was wrestled down. The keys were taken from the defendant.

"The confidential informant has prior arrests for drug possession and in fact has a pending case in the Stamford judicial district. The confidential informant did not know the defendant but did know his companion Marlene. The confidential informant never provided information that he saw Marlene handle drugs nor did he say the defendant handled drugs. The confidential informant never . . . purchased . . . drugs from the defendant nor Marlene, however, the confidential informant is in fact known at least to Officer Eisenstein to be a drug user. When the defendant was apprehended, no drugs were found on his person. The police had previously determined prior to moving in that the car was registered to someone other than the defendant and his companion. Specifically . . . Acarde Andre Dozier.[3]

"The police officer determined that the defendant was Emanuel B. Smith, Jr. after apprehending him and seizing a pager and some cash. The confidential informant never saw drugs being placed in the motor vehicle. The confidential informant did not witness nor participate in the crime. At this time of the search and subject seizure the motor vehicle was unoccupied and locked by the defendant with keys in his possession. The defendant was not in the car. There were no plain view circumstances wherein contraband was seen by the police officers in the car nor were there any [exigent] circumstances at the time of the search of the automobile."

On the basis of these facts, the trial court stated that the confidential informant's "basis of knowledge" was "at issue." The trial court concluded that the informant's information and the officer's observations were insufficient to establish probable cause. The court also concluded, however, that there were no exigent circumstances to justify the search.[4] Accordingly, the court found that the search violated the defendant's right to be free from

---

[3] "Although the defendant did not own the vehicle, he did have access to it, and thus we will refer to it as the defendant's vehicle." *Smith I,* 257 Conn. at 221 n.5.

[4] "Eleven bags of crack cocaine had been found in the defendant's vehicle." *Smith I,* 257 Conn. at 221 n.6.

an unreasonable search under the fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut. The court ordered that evidence of the crack cocaine found in the vehicle by the police be suppressed.

(Footnotes omitted.)  *Smith I,* 257 Conn. at 219-22.

### 2. Review of the petitioner's Fourth Amendment claim is barred by *Stone v. Powell*

In this Court, the petitioner raises a claim under the Fourth Amendment. Specifically, he asserts that the search of an automobile that he was using and the seizure of eleven bags of crack cocaine was unlawful. This claim is not reviewable in a federal habeas corpus proceeding. Indeed, review would violate the Supreme Court's 1976 ruling in *Stone v. Powell.*

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell,* 428 U.S. 465, 481-82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The rationale underlying the Court's holding lies in the nature of relief afforded when the Fourth Amendment is violated–*i.e,* the exclusionary rule. "The exclusionary rule was a judicially created means of effectuating the rights secured by the Fourth Amendment." *Stone*, 428 U.S. at 482. It was developed on the assumption "that the immediate effect of exclusion will be to discourage law enforcement officials from violating the Fourth Amendment by removing the incentive to disregard it." *Stone*, 428 U.S. at 492.

"[D]espite the broad deterrent purpose of the exclusionary rule, it has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Stone*, 428 U.S. at 486. *See, e.g., Pennsylvania Board of Probation and Parole,* 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (refusing to apply exclusionary rule to parole revocation proceedings); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (requiring that a defendant have standing to challenge a search; the exclusionary rule only applies when the Government attempts to use illegally seized against the victim of the unlawful search). Applying the rule to collateral proceedings, however, would contribute little, "if any, to the effectuation of the Fourth Amendment." *Stone*, 428 U.S. at 494-95. "Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant." *Stone*, 428 U.S. at 493. In comparison to the minimal deterrent effect of applying the exclusionary rule to collateral proceedings, the "exclusionary rule generates substantial social costs . . . which sometimes include setting the guilty free and the dangerous at large." (Citation omitted; internal quotation marks omitted.) *Hudson v. Michigan,* __ U.S. __, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56 (2006). The "physical evidence sought to be excluded is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." *Stone*, 428 U.S. at 490. Indeed, the "windfall afforded a guilty defendant by application of the rule is contrary to the idea of

10

proportionality that is essential to the concept of justice." *Id*. at 490. Therefore, after "weighing the utility of the exclusionary rule against the costs of extending it to collateral review of Fourth Amendment claims"; *Stone*, 428 U.S. at 489; the Court determined that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494.

The United States Court of Appeals for the Second Circuit has determined that only two exceptions exist to the general rule set forth in *Stone v. Powell.* Those exceptions permit review of a Fourth Amendment claim if (1) "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations" or (2) "the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2f 67, 70 (2d Cir. 1992). In the instant case, Connecticut obviously provided the petitioner with a corrective mechanism, and the petitioner obviously took advantage of that mechanism. Indeed, he convinced the trial court to suppress the crack cocaine. The Connecticut Supreme Court, however, reversed that decision and the evidence was admitted at trial. Thus, the only remaining question is whether an "unconscionable breakdown" occurred during the litigation of his claim.

In *Capellan v. Riley*, the petitioner asserted that he experienced an "unconscionable breakdown." Capellan had brought a motion to suppress certain evidence to the New York trial court. The trial court denied that motion and New York's Appellate Division affirmed

the judgment. While his application for review was pending before the New York Court of Appeals, the U.S. Supreme Court issued a decision directly applicable to his case. In light of this new precedent, he moved the Appellate Division for reargument and reconsideration of his claim. That court refused and the New York Court of Appeals denied his application for review.

Capellan then sought relief in federal court pursuant to 28 U.S.C. § 2254. The District Court granted relief. In so doing, it determined that an "unconscionable breakdown" occurred when the New York Appellate Division (1) denied reargument "without setting forth any reasoning" and (2) failed to mention the new Supreme Court decision when ruling on Capellan's reargument motion. *Capellan*, 975 F.2d 69. The District Court found that these actions resulted in the denial of any "meaningful inquiry into the merits of Capellan's Fourth Amendment claim." (Internal quotation marks omitted.) *Id.* The U.S. Court of Appeals for the Second Circuit *reversed* the District Court. In so doing, it explained that an "unconscionable breakdown" does not occur "simply because the federal court may have reach a different result." *Capellan*, 975 F.2d at 71. In rejecting Capellan's argument, it determined that "if we were to read *Powell* as requiring us to focus on the correctness of the *outcome* resulting from the application of adequate state court corrective procedures, rather than on the existence and application of the *corrective procedures* themselves, we would be assuming, implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein. Yet, *Powell* expressly discourages us from making any such assumption." (Emphasis in original.) *Capellan*, 975 F.2d at 71. In other words, "a mere disagreement with the outcome of a state court

ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Id.* at 72. Moreover, the Court of Appeals noted that "the mere fact that the Appellate Division adhered to its original outcome without comment concerning [the recent Supreme Court decision] does not mean that the Appellate Division failed to conduct a reasoned method of inquiry into relevant questions of fact and law. . . ." (Citation omitted; internal quotation marks omitted.) *Id.* at 71. As a result, Capellan's Fourth Amendment claim was not entitled to federal habeas review and his petition was ordered dismissed.

Here, the only exhausted claim raised by the petitioner implicates the Fourth Amendment. He asserts that the state courts erred in refusing to suppress the eleven bags of crack cocaine found in the vehicle that he was using. He received an evidentiary hearing before the trial court, relief in the trial court, and review by the state's highest court. As a result, he cannot demonstrate an "unconscionable breakdown" and, therefore, is not entitled to federal review.

### B.   None of the Other Claims Mentioned in the Petition Have Been Exhausted in the State Courts of Connecticut

The petitioner includes a list of claims in his petition and requests consideration of them by this Court. He recognizes that these claims are unexhausted. Therefore, he notes that if the court cannot review the unexhausted claims then "I would like to proceed on the single exhausted Fourth Amendment claim." Petition [Doc. # 12] at 10. The list contains the following claims.

(1) (c)   Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure,[5]

---

[5] The respondent acknowledges that the petitioner's Fourth Amendment claim is exhausted. The discussion in Section III.B. of this memorandum does not pertain to that

(2) (d)   Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, there was no probable cause found on 8-27-98 for the charge Interfere with Officer/Resisting type/class = M/A – CGS/PA number: 53a-167a,[6] and this charge was the reason as to why the Supreme Court of Connecticut seen exigent circumstances and my dismissal for docket number CR98-124871-T-S was reversed and the case was remanded for further proceeding according to law.  Also this charge of Interfere with Officer/Resisting section 53a-167a no probable cause found puts further proceedings in violation of Connecticut General Statutes § 53-39 malicious prosecution,

(3) (e)   Conviction obtained by a violation of the privilege against self-incrimination,

(4) (f)   Conviction obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the defendant,

(5) (g)   Conviction obtained by a violation of the protection against double jeopardy,

(6) (h)   Trial judge and prosecution deprived jury of its fact-finding duty for second trial on dates 11-21-02 thru 12-10-03,

(7)   Prosecutorial misconduct,

(8)   State also used perjured testimony at trial and allowed untrue testimony to go uncorrected,

(9)   Denial of effective assistance of counsel.

---

claim.

[6]   Here, the petitioner refers to Connecticut General Statutes § 53a-167a which defines the offense of interfering with an officer as "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer, special policeman appointed under section 29-18b or firefighter in the performance of such peace officer's, special policeman's or firefighter's duties."  The offense is considered a Class A misdemeanor.

14

(10) Discriminatory application of penal laws by state judicial and quasi-judicial officers, or state officials playing the shell game of rights and remedies.

(11) Punishment as a pre-trial detainee.

Petition [Doc. # 12] at 6.

Federal habeas corpus relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A). Indeed, even if a petitioner can demonstrate a "clear violation" of his rights, federal relief is unwarranted unless available state remedies are exhausted. *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam). This "exhaustion requirement springs primarily from considerations of comity." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir. 1982). It requires that federal courts refrain from exercising "habeas review of a state conviction unless the state courts have had an opportunity to consider and correct any violation of federal law" and, thus, demonstrates "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Id.* A claim is not "exhausted" unless it has been presented to the highest state court. *Daye*, 696 F.2d at 190 n.3.

After being sentenced, the petitioner appealed his conviction to the Connecticut Appellate Court. Before that court, he claimed "(1) that there was insufficient evidence to support the jury's verdict, (2) that the trial court improperly failed to conduct an in camera review of an arresting police officer's personnel file and (3) that the court improperly instructed the jury to harmonize the evidence." *Smith II,* 94 Conn. App. at 189. None of these claims are found on the petitioner's list. Thus, with the exception of his Fourth

Amendment challenge, the new claims have not been "exhausted" in the state courts. Indeed, the petitioner has raised several of these claims before the state habeas court. *See* Appendix C. Although that court dismissed the petitioner's petition, that dismissal currently is being challenged in an appeal pending before the Connecticut Appellate Court. *See* Appendix C. For these reasons, the Court must deny review of all of the petitioner's claims and dismiss the petition.

## IV.    CONCLUSION

For the reasons set forth above, the respondent requests that the Court dismiss the instant petition attacking the petitioner's conviction.

>Respectfully submitted,
>
>RESPONDENT-WARDEN JOHN TARASCIO
>
>By:    /s/
>JO ANNE SULIK
>Senior Assistant State's Attorney
>Civil Litigation Bureau
>Office of the Chief State's Attorney
>300 Corporate Place
>Rocky Hill, Connecticut 06067
>(860) 258-5887
>(860) 258-5968 (fax)
>E-mail: JoAnne.Sulik@po.state.ct.us
>Fed. Bar. No. ct 15122

## **CERTIFICATION**

I hereby certify that a copy of this document was mailed to Emmanuel B. Smith, Jr., Inmate # 232549, Osborn Correctional Center, 335 Bilton Road, P.O. Box 100, Somers, Connecticut 06071, on November 30, 2006.

        /s/
JO ANNE SULIK
Senior Assistant State's Attorney